IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-414-BO-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| HORACE TRANELL KING | ) | |

This cause comes before the Court on defendant's motion to suppress. The government has

responded, and a hearing was held via videoconference on January 22, 2021. The matter is ripe for

ruling. For the reasons that follow, defendant's motion is granted.

BACKGROUND

Defendant stands charged by way of indictment with one count of possession with the

intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1); one count of

maintaining a dwelling for the purpose of manufacturing, distributing, and using cocaine, in

violation of 21 U.S.C. § 856(a)(1); one count of possession of a firearm in furtherance of a drug

trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); and one count of possession of a firearm

by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924.

On July 26, 2018, Raleigh Police Department (RPD) was surveilling Brandon Hinton's

apartment. The warrant affidavit stated that RPD had identified Hinton as an individual involved

in drug activity and that RPD was surveilling the apartment to hopefully determine the identity of

Hinton's supplier. However, the police report shows that law enforcement was responding to a

report from neighbors that they had smelled marijuana in the apartment complex hallway. While

surveilling the apartment, an officer saw a dark-colored Camry drive up and an individual, later

identified as defendant, exit the Camry. Defendant walked into the apartment carrying a large,

white plastic bag, and he left the apartment around ten to twenty minutes later carrying a medium-sized duffle bag. Defendant proceeded to place the duffle bag in the back of the Camry, remove a grey plastic bag that "appeared to be stuffed with something large," hand it to another man, and drive away. RPD detectives and marked patrol units followed defendant and attempted to conduct a traffic stop based on a tint violation and speeding. After activating their blue lights, defendant drove off at a high speed and eluded the patrol units.

On the following day, July 27, 2018, officers applied for and obtained a search warrant for Hinton's apartment. During a search of the apartment, officers found numerous large, vacuum-sealed bags with marijuana residue, food savers containing cocaine residue, digital scales, and packaging materials. Hinton was charged with offenses in state court and a violation of federal supervised release, but officers did find any incriminating evidence regarding defendant.

Four months later, on November 16, 2018, law enforcement conducted a trash pull at defendant's address. The officers found marijuana stems, plastic packaging containing marijuana, tobacco packaging, and documentation for defendant. A second trash pull took place on November 30, 2018, and revealed marijuana stems, marijuana blunts, tobacco packaging, and documentation for defendant. A third trash pull took place on December 2, 2018, and revealed marijuana stems; green-striped, vacuum-sealed bags with marijuana odor; tobacco packaging; and documentation for defendant. A fourth trash pull took place on December 14, 2018, and revealed green-striped, vacuum-sealed bags with marijuana odor; plastic bags that tested positive for cocaine; tobacco packaging; and documentation for defendant.

On January 2, 2019, RPD detectives were conducting surveillance at defendant's address and observed an individual known as a habitual felon, with a criminal history of trafficking cocaine and possessing with intent to distribute cocaine, leaving defendant's apartment. The known felon

stayed around thirty to forty-five minutes before leaving the apartment empty-handed. Fifteen to twenty minutes later, defendant left the apartment, and he also was not reported to have anything in his hands. Defendant drove to a nearby restaurant and met with two men driving a gold-colored Lexus, which was registered to an individual with a criminal history of possessing cocaine and a stolen firearm. The affidavit states that the detectives witnessed what appeared to be a drug transaction involving a large silver suitcase, but the detectives did not take any enforcement action.

At an unspecified time in January 2019, officers observed defendant leaving his apartment and driving to a gas station. He stopped briefly, then went to at least one other gas station. No information or evidence corroborated this observed behavior as being related to any drugs or any illegal activity. Finally, on Friday, February 8, 2019, law enforcement conducted a fifth trash pull at defendant's apartment, which revealed marijuana stems or residue and documentation for defendant.

On February 13, 2019, RPD applied for and obtained a search warrant for defendant's apartment. During the search, officers found 3.85 grams of marijuana, 15.31 grams of powder cocaine, a stolen 9mm handgun, a digital scale, and a bottle of Inositol powder. After searching the Camry defendant had been seen driving, officers found a small bag containing approximately two grams of cocaine.

## DISCUSSION

Defendant asserts that the search warrant lacked probable cause, in violation of the Fourth Amendment, because there was insufficient information to form a reasonable belief that evidence of any crime would be found at defendant's residence. He also argues that exclusion of the evidence found during the search is not prohibited by the good faith exception. Defendant seeks an order suppressing all evidence obtained by law enforcement as a result of the alleged seizure

3

on February 13, 2019. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "The Fourth Amendment generally requires the police to obtain a warrant before conducting a search." *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir. 2010).

A warrant must be supported by probable cause, which exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). A judicial officer presented with a search warrant application is required to "make a practical, common-sense decision" as to whether there exists "a fair probability that contraband or evidence of a crime will be found" in the place identified in the application. *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Lalor*, 996 F.2d 1578, 1580 (4th Cir. 1993). When reviewing another court's probable cause determination, the reviewing court is to determine whether the issuing court "had a substantial basis for the decision" and must "accord the [underlying] decision great deference." *Lalor*, 996 F.2d at 1581 (internal citation and quotation omitted).

Defendant first argues that the search warrant is fatally defective because it fails to establish a sufficient temporal proximity between the allegations and the search. Specifically, defendant contends that the July 2018 surveillance of Brandon Hinton's apartment more than 202 days prior to the issuance of the warrant, upon which the warrant primarily relies, lacked sufficient temporal proximity to support the issuance of the warrant to search defendant's residence.

"[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt." *United States v. McCall*, 740 F.2d 1331, 1336 (4th Cir. 1984). "A valid search warrant may issue only upon allegations of 'facts so

4

closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *Id.* at 1335–36 (quoting *Sgro v. United States*, 287 U.S. 206, 210–11 (1932)). Staleness, however, is not simply a question of the passage of time. *Id.* at 1338. A court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." *Id.*

In this case, the July 2018 observation of defendant and the subsequent attempted traffic stop are far too distant in time from the issuance of the warrant to justify the search of defendant's apartment in February 2019. Between July 2018 and February 2019, there is no evidence that would indicate that evidence of drug possession or trafficking would be found at defendant's residence. *See Durham v. United States*, 403 F.2d 190, 195 (9th Cir. 1968) (finding that a search warrant lacked probable cause where the affidavit provided nothing that could lead to reasonable conclusion that "the activities described continued beyond the dates stated in the affidavit, much less for the more than four months that elapsed before the warrant issued"). The affidavit fails to provide a confidential source of information explaining the activity seen at Brandon Hinton's apartment or otherwise identifying defendant as being involved in drug activities or evidence of a sale of narcotics that would suggest defendant was involved in continuous drug activity. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (finding that a search warrant lacked probable cause when it was based on evidence of "a single, small, purchase of marijuana from [defendant] in her home more than six weeks before the search," the fact that defendant identified her source for the marijuana to a confidential informant, and an "unsubstantiated assertion by the affiant that [defendant's] home was owned by [her source]").

The government unsuccessfully attempts to rely on several other observations to show that defendant engaged in criminal drug activities after July 2018. RPD pulled defendant's trash five

separate times, but they never found more than small amount of presumed marijuana stems or drug residue. This amounts to no more than a hint of marijuana use in a trash can in downtown Raleigh, and there is no information to suggest that defendant, rather than a guest or another resident, possessed the marijuana stems or created the drug residue. This is insufficient to support probable cause. *United States v. Lyles*, 910 F.3d 787, 792 (4th Cir. 2018) ("[I]t is anything but clear that a scintilla of marijuana residue or hint of marijuana use in a trash can should support a sweeping search of a residence. The Supreme Court recognized similar dangers in searches incident to traffic stops, where allowing comprehensive searches following minor infractions would create 'a serious and recurring threat to the privacy of countless individuals.'") (citing *Arizona v. Gant*, 556 U.S. 332, 345 (2009)). The affidavit also alleges that defendant was seen going to more than one gas station after leaving his home, but there is no information, tips, or evidence to suggest that defendant was engaged in illegal activity. Instead, it is just as likely that the first gas station did not have his brand of cigarettes or chewing gum as it was that defendant was conducting illegal drug transactions, and this observation is insufficient to support probable cause.

Even if the observations listed in the affidavit are sufficient to create probable cause, under the totality of the circumstances, the affidavit also neglects to show that there is a reasonable "nexus" between any crime and defendant's residence. Residential searches have only been upheld where some information links the criminal activity to the defendant's residence. *Lalor*, 996 F.2d at 1582 (citations omitted). The affidavit does not contain any anonymous tip, statement from a confidential information, or investigative lead suggesting that marijuana was stored at or distributed from defendant's residence. The affidavit describes no suspicious or criminal activity at the residence prior to the search, and the officers cannot rely on the mere presence of a known felon at defendant's residence on one instance. *See Greenstreet v. County of San Bernadino*, 41

6

F.3d 1306, 1309 (9th Cir. 1994) (finding a warrant invalid because a supporting affidavit statement that police saw a known drug offender at the target of a search warrant was not a sufficient nexus between contraband and the place to be searched). Therefore, the affidavit does not show that officers would likely find evidence of drug possession or trafficking would be found at defendant's residence. *See Lalor*, 996 F.2d at 1582 (finding that the affidavit was "devoid of any basis from which the magistrate could infer that evidence of drug activity would be found at [defendant's residence]" when the affidavit did "not describe circumstances that indicate[d] such evidence was likely to be stored at [defendant's] residence").

In sum, affording the decision to issue the warrant due deference, there was not sufficient probable cause presented to support the conclusion that there was a fair probability that evidence of a crime or contraband would be found at defendant's residence. Defendant's Fourth Amendment rights were violated.

When law enforcement officers have acted "in objective good faith," an exclusionary sanction from evidence collected in violation of the Fourth Amendment is not appropriate. *See United States v. Leon*, 468 U.S. 897, 906–08 (1984). However, this good faith exception does not extend to cases where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. An officer may not rely on a warrant where the magistrate acts a "rubber stamp," merely approving a "bare bones" affidavit based solely upon uncorroborated information. *United States v. Wilhelm*, 80 F.3d 116, 121–22 (4th Cir. 1996).

Here, the state search warrant affidavit was so lacking in probable cause that it should not have been relied upon to justify the search. Officers could not rely on their observation of defendant walking into an apartment with a plastic bag and leaving with a duffel bag 202 days

7

Case 5:19-cr-00414-BO   Document 46   Filed 02/01/21   Page 7 of 8

prior to the search of his home as probable cause. The small amount of drug residue collected from trash pulls initiated four months later, even combined with several other observations of defendant engaging in activity that as just as likely to be innocuous as criminal, is also insufficient to support probable cause. The affidavit was "bare bones," stringing together observations with alarming large time gaps in between, and officers could not have relied upon it in good faith.

## CONCLUSION

Accordingly, defendant's motion to suppress [DE 27] is GRANTED. The evidence found pursuant to the February 13, 2019 search is SUPPRESSED.

SO ORDERED, this **3** day of January, 2021.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE

8